IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | |
|---|---|
| TFFI CORP., <br><br> Plaintiff, <br><br> v. <br><br> WILBERT WILLIAMS *et al.*, <br><br> Defendants. | Civil Action No. 8:13-cv-01809-AW |

**MEMORANDUM OPINION**

The instant case sounds in breach of contract and fraud. Pending before the Court is Plaintiff's Ex Parte Motion for a Temporary Restraining Order with Asset Freeze (Motion for TRO). The Court has reviewed the record and deems a hearing unnecessary. For the following reasons, the Court **DENIES IN PART** Plaintiff's Motion for TRO.

**I.  FACTUAL AND PROCEDURAL BACKGROUND**

On June 20, 2013, Plaintiff TFFI Corp. d/b/a Top Funding, Inc. filed a Complaint, which is not verified. Plaintiff generally alleges that it entered into a "factoring agreement" with Defendants by which Plaintiff agreed to make Defendants installment payments in exchange for the right to the (presumably greater) payments that government agency HUD supposedly owed Defendants. Plaintiff further alleges that the payments that HUD supposedly owed Defendants were based on bogus invoices.

Plaintiff is a Nevada corporation whose principal place of business is California. According to the Complaint, Plaintiff "is a business engaged in providing factoring assistance to

other corporate entities, most often pursuant to federal government contracts." Doc. No. 1 ¶ 11. Plaintiff has sued four Defendants: Wilbert Williams (Williams); Alpha Technology Systems, Inc. (Alpha); Global Holdings, LLC (Global); and Kamran Jones. Plaintiff alleges that Williams is the resident agent and controlling corporate officer of Alpha. Similarly, Plaintiff alleges that Williams is the principal officer of Global. The Court refers to Williams, Alpha, and Global collectively as "the Williams Defendants." For his part, Plaintiff alleges that Jones works at HUD and was a participant and coconspirator in the fraudulent scheme described above. Except as otherwise noted, facts and allegations relating to Jones are irrelevant to the instant Motion.

In September 2011, Plaintiff and Alpha entered into a factoring agreement (Agreement 1). Under this Agreement, Plaintiff basically agreed to provide payments to Alpha in exchange for HUD invoices representing payments that HUD supposedly owed Alpha. Although Williams and Alpha performed under this Agreement, Plaintiff essentially alleges that there is no evidence that a valid contract underlying the HUD invoices existed.

The Parties entered into three more Agreements. These Agreements followed a similar structure as Agreement 1, with allegedly sham receipts showing that HUD owed Alpha payments pursuant to purported subcontractor agreements. Agreement 2 was executed on or about October 20, 2012. Pursuant to Agreement 2, Plaintiff paid the Williams Defendants $45,000. After a series of negotiations, Williams sent Plaintiff of payment of $55,000. The Parties allegedly entered into Agreement 3 on November 30, 2012. Plaintiff alleges that Agreement 3 was for $98,500, and that it provided the Williams Defendants with $80,533 under this Agreement. Williams gave Plaintiff a partial payment of $55,000 on or around February 5, 2013. The Parties entered into Agreement 4 on or about December 28, 2012. Plaintiff alleges that Agreement 4 was for $97,500 and that it paid the Williams Defendants $76,011 under this Agreement. Plaintiff

alleges that the Williams Defendants have not submitted payments under Agreement 4. In sum, Plaintiff alleges that the Williams Defendants incurred obligations of $251,000 under Agreements 2 – 4; that it has provided the Williams Defendants with $201,544; and that the Williams Defendants have repaid only $110,000.

The Complaint and Motion for TRO contain a series of averments purporting to show that the Williams Defendants fraudulently induced Plaintiff into entering into Agreements 2 – 4. Inter alia, Plaintiff avers as follows: (1) the Williams Defendants' pattern of making full payment on Agreement 1, partial payments on Agreements 2 – 3, and no payment on Agreement 4 is suggestive of fraud; (2) Jones's refusal to talk about the alleged contracts underlying the invoices and the general lack of evidence showing the existence of contracts underlying the invoices suggests fraud; (3) Williams's emails attributing his failure to provide Plaintiff with full payment to misrouted bank transfers are "silly"; (4) Williams allegedly admitted to Plaintiff's director that Alpha had never been awarded certain HUD contracts, that Jones assisted the fraudulent scheme, and that the entire purpose of the scheme was to keep Williams's foundering companies afloat; and (5) the fact that Global was incorporated around the time that Alpha went into forfeiture status and was created a company specializing in asset protection suggests fraud.

Plaintiff filed its Complaint on June 20, 2013. Doc. No. 1. The Complaint contains causes of action for breach of contract, fraud, civil conspiracy, and RICO violations. In its prayer for relief, Plaintiff asks for, inter alia: (1) a declaration that Plaintiffs are liable for breach of contract, fraud, and for RICO violations; (2) compensatory and consequential damages on Plaintiff's fraud and breach of contract claims; and (3) compensatory and treble damages for the alleged RICO violations. The Complaint contains no explicit request for equitable relief.

A law firm sought leave to enter a limited appearance on behalf of the Williams Defendants. The law firm argued that the HUD inspector general had commenced an investigation into the allegations underlying the Complaint and suggested that making Williams proceed in this case would compromise his Fifth Amendment rights. The Court held a hearing on this and related motions on November 15, 2013. On the same day, the Court issued an Opinion and Order (Opinion), inter alia, denying the law firm's motion to enter a limited appearance. *See* Doc Nos. 27–28. At the hearing, Plaintiff made an unspecific request that the Court freeze the Williams Defendants' assets. The Court responded that such a request would have to be made via formal motion.

In response, on November 18, 2013, Plaintiff filed its Motion for TRO. Plaintiffs argue primarily, if not exclusively, from fact in the Motion. That is, the Motion contains very little, if any, legal argumentation and no citations to legal authority. Plaintiff asks for the following relief in the Motion: "(1) freezing the assets of the Williams Defendants and maintaining the *status quo*; (2) preventing the Williams Defendants from destroying or altering documents; (3) requiring the Williams Defendants to provide sworn written accountings of all assets within 10 days; and (4) setting a show-cause hearing to determine whether to issue a continuing Asset Freeze Order." Doc. No. 29 at 2. As Plaintiff filed this Motion ex parte on an emergency basis, the Court resolves it despite the absence of a response from the Williams Defendants.[1]

## II. LEGAL ANALYSIS

Titled "Temporary Restraining Order," Federal Rule of Civil Procedure 65(b) provides:

(1) Issuing Without Notice. The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:

---

[1] As discussed in the Court's Opinion, it is unlikely that Alpha and Global, as unrepresented corporate entities, would have standing to respond.

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b).

Additionally, to prevail on a motion for a TRO, "[t]he moving party must show that: (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm absent [emergency] relief, (3) the balance of equities tips in its favor, and (4) [a TRO] is in the public interest." *Montgomery v. Hous. Auth. of Balt. City*, 731 F. Supp. 2d 439, 441–42 (D. Md. 2010) (citing *Real Truth About Obama, Inc. v. Fed. Election Comm'n,* 575 F.3d 342, 346 (4th Cir. 2009)).

Generally, the Fourth Circuit has enunciated a three-step approach to determining whether it is appropriate to issue a prejudgment injunction freezing a party's assets. *See United States ex rel. Rahman v. Oncology Assocs.*, 198 F.3d 489, 497 (4th Cir. 1999). Courts "must begin with an analysis of the claims in suit to determine whether they seek cognizable relief in equity involving assets of the defendant." *Id.* Courts "then proceed to determine whether the interim relief sought— . . . the preliminary injunction freezing assets—is a reasonable measure to preserve the *status quo* in aid of the ultimate equitable relief claimed." *Id.* (citations omitted). Finally, courts may "take into account that a court of equity has enhanced authority when the public interest is involved." *Id.*

In this case, Plaintiff has not adequately shown that it is proper to issue an ex parte emergency injunction freezing the Williams Defendants' assets. For starters, Plaintiff has not satisfied the procedural requirements of Rule 65(b). Plaintiff's counsel has not certified in

5

writing any efforts made to give notice to the Williams Defendants and why notice should not be required. Plaintiff's director has had extensive email communications with Williams and the latter lives in Maryland and attended the recent hearing. Therefore, Plaintiff has not adduced an adequate reason to issue the TRO ex parte. Nor has Plaintiff set forth specific facts in a verified complaint or affidavit "clearly show[ing] [that] immediate and irreparable injury, loss, or damage will result to [Plaintiff] before [Williams] can be heard in opposition." The Complaint is not verified. Furthermore, Plaintiff filed it five months ago and has not moved for a TRO until now. Absent more particularized facts showing that the Williams Defendants have recently engaged in conduct threatening immediate and irreparable harm to Plaintiff's business, this time gap weighs against the inference that the case presents an emergency. And yet the facts on which the Williams Defendants rely to support their Motion for TRO relate primarily, if not exclusively, to conduct that predates the Complaint. Accordingly, Plaintiff's Motion for TRO is improper under Rule 65(b).

The Court also denies the Motion on more substantive grounds. Although the Fourth Circuit has not created an insurmountable bar for obtaining a prejudgment injunction freezing assets, Plaintiff's Complaint seeks relief in law, not equity. The Complaint sets forth no equitable causes of action. Furthermore, in its prayer for relief, Plaintiff does not explicitly seek equitable relief. Plaintiff does not appear to dispute that identifiable contracts govern the alleged fraud at issue and appears to request expectation damages based on the Williams Defendants' alleged breaches thereof, as well as statutory damages for RICO violations. Therefore, although there may be equitable aspects to Plaintiff's Complaint, it sounds primarily in law.

Furthermore, even if Plaintiff's Complaint sufficiently sounded in equity, Plaintiff has not adequately shown that a TRO would be a reasonable measure to preserve the status quo in

aid of the ultimate equitable relief claimed. Although Plaintiff's allegations raise a plausible inference of fraud, Plaintiff has not adduced reasonably specific declarations or evidence suggesting that the Williams Defendants are dissipating assets. The Motion for TRO seems to proceed from the premise that one can infer that the Williams Defendants are dissipating assets because they allegedly defrauded Plaintiff. If one took this notion to its logical extreme, a TRO or preliminary injunction freezing assets would be appropriate whenever a plaintiff stated a facially plausible claim for fraud. This result is beyond the traditional equitable powers of federal courts. As the Supreme Court has aptly written,

> To sustain the challenged order would create a precedent of sweeping effect. . . . Every suitor who resorts to chancery for any sort of relief by injunction may, on a mere statement of belief that the defendant can easily make away with or transport his money or goods, impose an injunction on him, indefinite in duration, disabling him to use so much of his funds or property as the court deems necessary for security or compliance with its possible decree. And, if so, it is difficult to see why a plaintiff in any action for a personal judgment in tort or contract may not, also, apply to the chancellor for a so-called injunction sequestrating his opponent's assets pending recovery and satisfaction of a judgment in such a law action. No relief of this character has been thought justified in the long history of equity jurisprudence.

*Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 327 (1999) (citation and internal quotation marks omitted). Moreover, although there is a generalized public interest in deterring fraud and compensating its victims, this case does not present an overriding concern of public policy. Therefore, the *Rahman* factors do not support the issuance of a TRO.

7

Additionally, Plaintiff has not adequately shown that it is likely to suffer irreparable harm absent the issuance of a TRO. In support of this assertion, the Court incorporates by reference its preceding analysis. As discussed, the case has been on the Court's docket for almost five months and Plaintiff just moved for a TRO. Yet Plaintiff has made an inadequate showing that the Williams Defendants have dissipated assets, let alone that they recently started to do so. Where, as appears to be the case here, "the harm suffered by the moving party may be compensated by an award of money damages at judgment, courts generally have refused to find that harm irreparable." *Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 694 (4th Cir.1994) (citations omitted); *see also Monsanto Co. v. Geertson Seed Farms*, 130 S.Ct. 2743, 2748 (2010) (emphasis added) (stating that irreparable harm is present only where "remedies available at law, such as monetary damages, are inadequate to compensate for that injury"); *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir.1985) (citation omitted) ("Recoverable monetary loss may constitute irreparable harm only where the loss threatens the very existence of the movant's business."). Therefore, Plaintiff has yet to make a sufficient showing of irreparable harm.[2]

The Court must consider the propriety of the other relief that Plaintiff asks for in its Motion for TRO. The Court declines the request to issue an injunction prohibiting Defendants from destroying or altering documents. One, Plaintiff has not made this request with the requisite degree of specificity. Two, other than the plausible inference of fraud that Plaintiff's allegations create, Plaintiff has yet to show that Defendants have engaged in such conduct or plan to. Third, the spoliation doctrine prohibits "the destruction or material alteration of evidence or . . . the

---

[2] The Court acknowledges that, under Rule 64, Plaintiff may be able to make a showing that a TRO or preliminary injunction freezing assets is appropriate. *See Rahman*, 198 F.3d at 499–501. However, Plaintiff has not raised, let alone briefed, this issue, and the Court declines to consider it *sua sponte*. This decision is without prejudice to the right of Plaintiff to raise this argument upon a proper factual and legal showing.

failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001) (citation omitted). As Plaintiff has already filed a suit against the Williams Defendants sounding in financial fraud, it is highly likely that this rule applies to the unspecified financial records Plaintiff seeks. For its part, the request for a show cause hearing to determine whether to continue the asset freeze is moot in light of this decision.

Finally, Plaintiff asks for an order requiring the Williams Defendants to provide sworn written accountings of all assets within 10 days. Although this request could be reasonable under the facts and circumstances of this case, Plaintiff has not made it with the requisite degree of specificity. This is important for various reasons, including Williams's intimation that requiring him to answer will compromise his Fifth Amendment rights. Therefore, the Court denies this request without prejudice to Plaintiff's right to make a renewed, more particularized request for the unspecified information at issue.

## III. CONCLUSION

For the foregoing reasons, the Court **DENIES IN PART** Plaintiff's Motion for TRO. A separate Order memorializing the Court's rulings follows.

| November 20, 2013 | /s/ |
| --- | --- |
| Date | Alexander Williams, Jr.<br>United States District Judge |