IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|                                         |   |                                  |
|-----------------------------------------|---|----------------------------------|
| TFFI CORP. D/B/A TOP FUNDING, INC.      | : |                                  |
| v.                                      | : | Civil Action No. DKC 13-1809     |
| WILBERT WILLIAMS, ET AL.                | : |                                  |
|                                         | : |                                  |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this breach of contract and fraud case are two motions filed by Plaintiff TFFI Corp. ("Plaintiff"): (1) a motion for summary judgment (ECF No. 83); and (2) a motion seeking an order granting adverse inferences (ECF No. 65). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion for summary judgment will be granted in part and denied in part, and the motion for adverse inferences will be denied as moot.[1]

## I.   Background

### A.   Factual Background

Defendant Wilbert Williams ("Mr. Williams") was the resident agent and officer of Defendants Alpha Technology Systems, Inc. ("ATS") and Williams Global Holdings, LLC

---

[1] Plaintiff requests that the court make adverse inferences in considering its motion for summary judgment. The undersigned analyzes this request as part of the motion for summary judgment. At this point, a separate motion for adverse inferences is not necessary, and it will be denied as moot.

("Williams Global") (collectively, the "Defendants"). (*See* ECF Nos. 1-1; 1-7; 82 ¶ 4). Plaintiff entered into factoring agreements with ATS in November 2011 and October 2012. (ECF Nos. 1-15; 1-22).[2] Under the 2012 factoring agreement (the "factoring agreement"), Plaintiff made payments to ATS or Williams Global in order to provide ATS with upfront capital to fulfill purchase order contracts it made with the United States Department of Housing and Urban Development ("HUD"). In exchange for these payments, ATS assigned the purchase order to Plaintiff, and once ATS completed the work for HUD, HUD would pay Plaintiff the full amount of the purchase order. (ECF No. 1-22, at 6).[3] The factoring agreement attested that "[e]ach [purchase order] submitted for assignment by [ATS] is a bona fide purchase order and conforms in all respects to the representations contained in the Certificate, which Certificate is true and correct in all respects." (*Id.* at 11). The Certificate, which was part of the factoring agreement, indicated that attached to the factoring agreement was a "purchase order/contract with number R-2012-AY-00532 in the

---

[2] Plaintiff asserts that Defendants performed under the 2011 factoring agreement. (ECF No. 81 ¶ 18). Factoring is "[t]he buying of accounts receivable at a discount." *Factoring*, Black's Law Dictionary (10th ed. 2014).

[3] The factoring agreement provided that if, "from time to time," ATS received payment from HUD directly, it "shall immediately pay" Plaintiff the sums owed. (ECF No. 1-22, at 6).

total amount of $55,000.00 . . . between [ATS] and [HUD]." (*Id.*
at 18). The factoring agreement further indicated that a Mr.
Kamran Jones was ATS's point of contact within the Office of the
Chief Procurement Officer at HUD. Mr. Williams sent Plaintiff a
document that he purported was a valid purchase order, signed by
a HUD contracting officer, Darlene Walls. (ECF No. 1-18).

Pursuant to the factoring agreement and in response to a
purchase order invoice, Mr. Williams sent Plaintiff (the "first
invoice") (ECF No. 1-20), Plaintiff sent Williams Global $45,000
on October 22, 2012 (ECF No. 1-26). Plaintiff received what was
purported to be an acknowledgment of the arrangement signed by
Mr. Jones, the HUD point of contact. (ECF No. 1-24). Mr.
Williams then provided Plaintiff with additional documentation
outlining the work supposedly completed under the first invoice.
(ECF No. 1-27). On December 15, Plaintiff received a check for
$55,000 from Williams Global, which was purported to be HUD's
payment for work performed under the first invoice. (ECF No. 1-
42).

In late November 2012, Mr. Williams sent Plaintiff another
invoice under the same HUD contract (the "second invoice").
(ECF No. 1-29). Plaintiff sent Mr. Williams a purchase order
funding agreement, which he signed, stating that Plaintiff would
send ATS $80,533 to complete the second invoice project, and ATS
would repay Plaintiff $98,500. (ECF No. 1-38). Similar to the

3

procedure surrounding the first invoice, Plaintiff attempted to send Mr. Jones confirmation of the arrangement and received what was purported to be an acknowledgment signed by Mr. Jones. (ECF No. 1-32).[4] Plaintiff has only received one payment of $55,000, which was late, under the second invoice. (ECF No. 1-4).

In late December 2012, Mr. Williams sent Plaintiff a third invoice (the "third invoice"). (ECF No. 1-36). Under this invoice, Plaintiff was to pay ATS $76,011 for a future return of $97,500. (ECF No. 1-2). Mr. Williams sent Plaintiff an e-mail purporting to be from Mr. Jones confirming the third invoice. (ECF No. 83-21). Pursuant to this agreement, on January 22, 2013, Plaintiff sent Williams Global $76,011. (ECF No. 1-6). Plaintiff has not been paid any amount under the third invoice.

In January 2013, Peter Chao, Plaintiff's senior business manager, growing concerned about the overdue repayment under the second invoice and the recent substantial payment made for the third invoice, e-mailed Mr. Williams to inquire about the expected payments. (ECF No. 1-14). After much delay and back and forth, Plaintiff received the aforementioned partial payment for the second invoice, but none for the third. During

---

[4] It is not clear exactly how Plaintiff attempted to send Mr. Jones the confirmation other than that it was "via electronic mail." (*See* ECF No. 81, at 7 n.13). The record seems to indicate that Plaintiff would e-mail Mr. Williams, who would purportedly forward the confirmation to Mr. Jones, but it is unclear.

additional correspondence between Mr. Chao and Mr. Williams regarding the overdue payments, Mr. Williams asserted that he was in contact with Mr. Jones to resolve any issues with the payments and that the delay was due to problems with the bank. (ECF No. 1-21).

On February 25, 2013, Mr. Chao wrote to Mr. Jones directly to alert him that it had not yet been fully paid under the factoring agreement for work purported to be done by ATS under HUD contract number R-2012-AY-00532. (ECF No. 1-16). In response, Mr. Jones said that he had "been instructed not to talk to any vendors about contractual topics" and copied Mr. Williams. (*Id.*). According to Plaintiff, following a call between Mr. Chao and Mr. Williams in which Mr. Williams allegedly admitted to creating a fraudulent scheme, Plaintiff began communicating with the HUD Office of Inspector General ("HUD OIG"). (ECF No. 81 ¶¶ 57-59). On March 13, Mr. Williams e-mailed Mr. Chao that he "need[ed] a little time to resolve, but will account for all damage to [Plaintiff's] operation." (ECF No. 83-5).

The HUD OIG investigated the matter and issued a report, which concluded that the investigation "discovered no evidence to support the allegation that [Mr. Jones] provided loan verification" to Plaintiff, and "develop[ed] evidence which suggests that [Mr.] Williams devised and carried out a

fraudulent scheme to induce [Plaintiff] to enter into a contractual agreement with [ATS]." (ECF No. 83-1, at 5). The HUD OIG report noted that R-2012-AY-00532 "was not a valid HUD contract number." (*Id.* at 6). Moreover, Ms. Walls, the contracting officer who purportedly signed the purchasing order Mr. Williams sent to Plaintiff in October 2012 had stopped working at HUD in 2010. According to the HUD OIG report, HUD employees contacted Mr. Williams telephonically during the investigation, and he "admitted the contracting documentation was fraudulent, and that he falsified the documentation and provided it to [Plaintiff] in order to convince [Plaintiff] that [ATS] held a valid contract with HUD." (*Id.*). During an interview with the HUD OIG, Mr. Jones stated that "he had no knowledge regarding a 2012 contract held by [ATS] with HUD" and contends that he never signed the documents Mr. Williams provided Plaintiff. (*Id.*).

**B. Procedural History**

On June 20, 2013, Plaintiff filed its initial complaint against Defendants and Mr. Jones. (ECF No. 1). On January 24, 2014, the clerk entered default as to ATS and Williams Global. (ECF No. 40). After obtaining the HUD OIG report, Plaintiff moved for leave to file an amended complaint, which the court granted. (ECF No. 80). Mr. Williams answered the amended complaint on September 3, 2015. (ECF No. 82). The amended

complaint removed Mr. Jones as a defendant and asserted the following counts: breach of contract (Count I); fraud (Count II); civil conspiracy (Count III); and racketeering pursuant to RICO's civil provision (Count IV). (ECF No. 81).[5] The amended complaint seeks compensatory, consequential, and punitive damages against Defendants jointly and severally, treble damages under RICO, and attorney's fees and interest. Mr. Williams answered the amended complaint, invoking his right under the Fifth Amendment to the United States Constitution and largely declining to respond. (ECF No. 82). During discovery, Plaintiff deposed Mr. Williams, who invoked his rights under the Fifth Amendment and refused to answer nearly every question. (*See* ECF No. 65-1).

On September 21, 2015, Plaintiff filed the pending motion for summary judgment. (ECF No. 83). Mr. Williams responded (ECF No. 88), and Plaintiff replied (ECF No. 90). Plaintiff has also filed a pending motion asking the court to grant adverse inferences because of Mr. Williams's invocation of the Fifth Amendment. (ECF No. 65). Mr. Williams responded to that motion (ECF No. 69), and Plaintiff replied (ECF No. 71).

---

[5] The clean amended complaint (ECF No. 81) differs from the redline amended complaint Plaintiff submitted with its motion to amend (ECF No. 76-3). Any material variations will be addressed in the analysis section.

## II.  Standard of Review

Summary judgment is appropriate under Federal Rule of Civil Procedure Rule 56(a) when there is no genuine dispute as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law.  In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986), the Supreme Court of the United States explained that, in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.* at 248.  Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented."  *Id.* at 252.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion."  *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also EEOC v. Navy Fed. Credit Union,* 424 F.3d 397, 405 (4th Cir. 2005).  The mere existence of a "scintilla" of

evidence in support of the nonmoving party's case is not sufficient to preclude an order granting summary judgment. *See Liberty Lobby,* 477 U.S. at 252.

A "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F.Supp.2d 373, 375 (D.Md. 2001) (citation omitted). Indeed, this court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *See Drewitt v. Pratt,* 999 F.2d 774, 778-79 (4th Cir. 1993) (quoting *Felty v. Graves-Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir. 1987)).

## III. Analysis

### A.   Adverse Inferences and Evidentiary Issues

As a threshold matter, Plaintiff requests that the court draw adverse inferences from Mr. Williams's "patently overbroad invocation of the Fifth Amendment[,] which has completely frustrated [Plaintiff's] ability to adequately conduct discovery." (ECF No. 65; *see also* ECF No. 83, at 3-4). Mr. Williams argues that any adverse inference "should be allowed only at trial (not at summary judgment) and then only in the context of an adverse inference to specific questions that are relevant and to which the answer would be probative and admissible." (ECF Nos. 69, at 5-6; 88, at 5-6). He further

asserts that any adverse inference made should not relieve Plaintiff of its burden of putting forth appropriate evidence.

Although the Fifth Amendment prohibits the drawing of adverse inferences in criminal matters, "the 'prevailing view' is that 'the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them.'" *Maryland v. Univ. Elections, Inc.*, 862 F.Supp.2d 457, 464 (D.Md. 2012) (quoting *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976)); *see also Richardson v. Cabarrus Cnty. Bd. of Educ.*, 151 F.3d 1030, *3 (4th Cir. 1998) (unpublished table opinion) (noting that a district court granting an adverse inference due to a party's refusal to testify was "proper"). A court may draw adverse inferences at the summary judgment stage. In *Universal Elections*, Judge Blake found that the plaintiff was "entitled to an adverse evidentiary inference from [a defendant's] invocation of his Fifth Amendment privilege" at the summary judgment stage. 862 F.Supp.2d at 464. Judge Blake held that the defendant's "refusal to answer basic questions about his knowledge corroborates the reasonable inference that he had knowledge," and "[c]ombined with the other evidence, including [] deposition testimony, this leaves no genuine dispute that [the defendant] knowingly and willfully violated the statute" in question. *Id.*

Here, it is appropriate to draw certain adverse inferences against Mr. Williams at the summary judgment stage in the context of analyzing Plaintiff's arguments and evidence for each count. Mr. Williams is correct, however, that such adverse inferences do not relieve Plaintiff of establishing facts sufficient to satisfy its burden of proof. Because of the specific and limited nature of the adverse inferences that will be drawn, it is inappropriate and unnecessary to grant Plaintiff's motion for adverse inferences writ large. Accordingly, Plaintiff's motion for adverse inferences will be denied as moot, but the court will draw specific adverse inferences as appropriate in subsequent sections analyzing its summary judgment motion.

In addition, Mr. Williams argues that Plaintiff has not put forth sufficient evidence to succeed on a motion for summary judgment. Mr. Williams asserts in his opposition to Plaintiff's motion for that:

> [A] mere citation to an exhibit attached to the plaintiff's complaint does not make facts undisputed. A mere citation to a government document not made under oath and which contains multiple levels of hearsay does not make the facts asserted therein undisputed. Bald assertions of "fact" without any citation to the record likewise do not make those "facts" undisputed.

(ECF No. 88, at 6-7). Mr. Williams appears to be making two separate arguments: first, that Plaintiff's purported

"undisputed facts" are actually disputed; and second, that the evidence Plaintiff has presented in support of its motion is inadmissible under Federal Rule of Civil Procedure 56(c)(2).

Mr. Williams's conclusory assertion that facts are disputed is not sufficient to create an actual dispute of material fact. Plaintiff has put forth evidence in the form of e-mails, business records, and Mr. Chao's sworn affidavit attesting to the facts alleged in the amended complaint.  As Mr. Williams himself notes, "'Once the moving party satisfies [its] initial burden, the non-moving party may not rest upon his allegations, but must present evidence demonstrating the existence of a genuine issue of material fact for trial.'"  (ECF No. 88, at 3 (quoting *Polacsek v. Debticated Consumer Counseling, Inc.*, 413 F.Supp.2d 539, 543 (D.Md. 2005) (citing *Liberty Lobby*, 477 U.S. at 248))).  Mr. Williams has put forth *no* evidence to show that there is a genuine dispute of material fact.  Contrary to his assertion, a citation to a fact in the record, if not disputed, makes the fact undisputed.   *See*   Fed.R.Civ.P.   56(e). Accordingly, facts shown by Plaintiff will be considered undisputed.

Mr. Williams's evidentiary concerns fare no better.  First, it is not clear that this objection is proper under Rule 56. Rule 56(c)(2) was amended in 2010 to provide that "[a] party may object that the material cited to support or dispute a fact

cannot be presented in a form that would be admissible in evidence." "The objection now contemplated by the amended Rule [thus] is not that the material *has not* been submitted in admissible form, but that it *cannot* be." *Brown v. Siemens Healthcare Diagnostics, Inc.*, No. DKC-11-0769, 2012 WL 3136457, at *5 (D.Md. July 31, 2012) (citations and internal quotation marks omitted); *see also Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 538-39 (4th Cir. 2015) ("The court and the parties have great flexibility with regard to the evidence that may be used on a [summary judgment] proceeding. The court may consider materials that would themselves be admissible at trial, and the content or substance of otherwise inadmissible materials where the party submitting the evidence show[s] that it will be possible to put the information into admissible form." (citations and internal quotation marks omitted)). Mr. Williams has made no such argument here. Furthermore, Mr. Williams makes only a "vague hearsay objection." *See Williams v. Silver Spring Volunteer Fire Dep't*, 86 F.Supp.3d 398, 408 (D.Md. 2015) (citing *Maltas v. Maltas*, 197 F.Supp.2d 409, 427 (D.Md. 2002) ("It is not the responsibility of the court to sift through the documents to determine exactly what should be excluded, if anything.")). Although Mr. Williams appears to allege that the HUD OIG report contains hearsay, he does not put forth specific objections to

13

instances of hearsay within the report, and he has not alleged that the facts presented within the report, or elsewhere in the record, would be inadmissible at trial.

### B.   Breach of Contract

"To prevail in an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." *Jaguar Land Rover N. Am., LLC v. Manhattan Imported Cars, Inc.*, 738 F.Supp.2d 640, 649 (D.Md. 2010) (citing *Taylor v. NationsBank, N.A.*, 365 Md. 166, 175 (2001)).  Under the objective theory of contracts, which applies in Maryland:

> [A] court is to determine from the language of the agreement, what a reasonable person in the position of the parties would have understood the contract to mean at the time the contract was entered into; when the language of the contract is plain and unambiguous, there is no room for construction as the courts will presume that the parties meant what the expressed.

*Mathis v. Hargrove*, 166 Md.App. 286, 319 (2005).  "It is not necessary that the plaintiff prove damages resulting from the breach, for it is well settled that where a breach of contract occurs, one may recover nominal damages even though he has failed to prove actual damages." *Taylor*, 365 Md. at 175 (citations omitted).[6]

---

[6] The factoring agreement contains a choice-of-law provision that states the agreement should be construed according to

Plaintiff alleges that Defendants breached their duty under the factoring agreement by failing to repay fully the amount owed Plaintiff.  In support of their argument, Plaintiff points to a copy of the factoring agreement signed by Mr. Williams on behalf of ATS (ECF No. 1-22), subsequent documentation regarding payments made by Plaintiff and payments owed by Defendants (multiple exhibits attached to ECF No. 1), and evidence that Defendants did not pay the full amount owed (*see, e.g.*, ECF No. 83-2 ¶ 6).  Plaintiff is also entitled to an adverse inference from Mr. Williams's refusal to respond to questions and evidence at his deposition regarding the factoring agreement and failure to pay Plaintiff under the terms of the factoring agreement. (ECF No. 65-1).  Mr. Williams offers no evidence or argument to dispute the evidence in the record other than asserting that "there exists a dispute as to the existence of a contract, and the relationship of the parties to it (*e.g.*, was [Mr. Williams] a [principal] or merely a guarantor) if it did exist." (ECF No. 88, at 8).

---

Nevada law, which is Plaintiff's state of incorporation.  (ECF No. 1-22, at 15).  In its motion for summary judgment, Plaintiff applies Maryland law, however, and Mr. Williams does not object. Moreover, it is likely that applying Nevada law would lead to the application of the same basic test.  *See Tarr v. Narconon Fresh Start*, 72 F.Supp.3d 1138, 1141 (D.Nev. 2014) ("A breach of contract claim under Nevada law requires (1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach.").  Accordingly, the court will apply Maryland law.

Mr. Williams's bald assertion disputing that a contract exists does not create a genuine dispute of material fact. *See CapitalSource Finance, LLC v. Delco Oil, Inc.*, 608 F.Supp.2d 655, 664 n.4 (4th Cir. 2009) (noting that, in addition to failing to raise appropriately affirmative defenses, the defendant "failed to present evidence generating a material dispute of fact"). Mr. Williams's meager assertions cannot overcome the overwhelming undisputed evidence in the record that a contract existed, creating an obligation for Defendants to pay Plaintiff certain amounts owed in exchange for cash advances Plaintiff provided Defendants. There is also no dispute that Defendants breached this duty by not paying fully the amounts owed. Specifically, Plaintiffs are owed $43,500 that has not been paid for the second invoice and $97,500 for the third invoice – a total of $141,000.[7]

Plaintiff argues that all three defendants are jointly and severally liable for damages caused by the breach. The issue of liability for ATS and Williams Global is not currently ripe for decision because Plaintiff has not served properly the amended complaint on ATS and Williams Global. *See* Fed.R.Civ.P. 5(a)(2) (requiring that "a pleading that asserts a new claim for relief

---

[7] The amended complaint asserts that Defendants owe $155,000 in compensatory damages, but that figure is not supported by the record.

against [a party in default] must be served on that party under Rule 4"). Although the breach of contract claim against ATS and Williams Global is not new, the amended complaint added claims of civil conspiracy and civil RICO against ATS and Williams Global. Thus, the amended complaint must be served on the two corporations in accordance with the requirements of Fed.R.Civ.P. 4, and nothing in the record indicates that Plaintiff served ATS and Williams Global in accordance with the requirements of Rule 4. Judgment is not appropriate against ATS and Williams Global on any claim within the amended complaint until Plaintiff has effectuated proper service. *See Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. and Canada*, 674 F.2d 1365, 1369-70 (11th Cir. 1982) (holding that "no default could issue on the amended complaint against [a defaulted defendant] because it was not properly served") (cited in 4B Fed. Prac. & Proc. Civ. § 1146 (4th ed.)). The court in *Varnes* noted that "[t]he concern of Rules 4 and 5(a) is notice to the defendant of claims of relief," and a defendant "is entitled to make . . . strategy decisions [on all claims] following notice of the new or additional claim of relief." *Id.* at 1369. Moreover, because default judgments are disfavored, "there must be strict compliance with the legal prerequisites establishing the court's power to render the judgment. *Id.* at 1369; *see also St. Paul Surplus Lines Ins. Co. v. Davis*, 983 F.2d 1057, *2 (4th Cir.

1993) (unpublished table opinion) ("Under the law in this Circuit, default judgments are disfavored."). Although Plaintiff's motion is styled as a motion for summary judgment, it is correctly viewed as a motion for summary judgment against Mr. Williams and a motion for default judgment against ATS and Williams Global.

Rule 4(m) mandates that the court "must dismiss [an] action without prejudice" if a defendant has not been served properly "within 90 days after the complaint is filed." Plaintiff has not shown proper service of the amended complaint against ATS and Williams Global, and 90 days have long passed since Plaintiff filed the amended complaint. Accordingly, Plaintiff's motion for summary judgment will be granted as to liability on Count I against Mr. Williams, and the claims within Count I will be dismissed as to ATS and Williams Global.

## C.  Fraud

In Maryland, to prevail on a claim of fraud, a plaintiff must establish:

> (1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff

18

> suffered compensable injury resulting from
> the misrepresentation.

*Gourdine v. Crews*, 405 Md. 722, 758 (2008).  Here, Plaintiff argues "that Mr. Williams made several false representations, that each representation was known to be false at the time it was made, that the representations were made to perpetuate fraud on [Plaintiff], that [Plaintiff] justifiably relied on these representations and that it was damaged by its reliance."  (ECF No. 83, at 14).  Plaintiff's original complaint alleged fraud against Mr. Williams and Mr. Jones.  (ECF No. 1 ¶ 82).  Although the clean version of the amended complaint purports to allege fraud against all "Defendants" (ECF No. 81 ¶ 82), the fraud claim in the redline version is only against "Defendant Mr. Williams" (ECF No. 76-3 ¶ 82).  Because the amended complaint was not served properly on ATS or Williams Global, and the original complaint did not allege fraud against the two corporations, Plaintiff's fraud count will be construed as being alleged only against Mr. Williams.  In his opposition, Mr. Williams contends only that "there exists a genuine dispute of material fact as to the material statements made by the defendant as well as any intent to defraud the plaintiff."  (ECF No. 88, at 8-9).

First, there is no genuine dispute that Mr. Williams made false statements to Plaintiff.  Mr. Williams made multiple

statements and representations to Plaintiff that ATS was performing work under a valid HUD contract numbered R-2012-AY-00532, but the record shows that such a contract did not exist, work was not being performed, and HUD was not processing any payments to Plaintiff or ATS. (*See, e.g.*, ECF No. 83-1, at 5-6). Furthermore, Plaintiff is entitled to an adverse inference as to the existence of a contract based on Mr. Williams's invocation of the Fifth Amendment at his deposition. (ECF No. 65-1). The record also shows that Plaintiff knew about the falsity of his statements and intended to defraud Plaintiff. "Fraudulent intent can be inferred from: (1) the situation of the parties; (2) the activity of the promisor in procuring the transaction; (3) a short time period between the promise and the failure to perform; and (4) the promisor's subsequent conduct." *Sagent Tech., Inc. v. Micros Sys., Inc.*, 276 F.Supp.2d 464, 468 (D.Md. 2003) (citing *Holman v. IMC Mortg. Co.*, No. 99-11778, 2001 WL 21222, at *2 (D.Md. Jan. 9, 2001); *Tufts v. Poore*, 219 Md. 1, 10-11 (1959)). "Fraud is not a single fact but a conclusion to be drawn from all of the circumstances of the case." *Fuller v. Horvath*, 42 Md.App. 671, 685 (1979) (citation omitted). Here, the evidence and the circumstances of the case show that Mr. Williams made the false statements with the intent to defraud Plaintiff. The contract Mr. Williams presented as the basis for the factoring agreement did not exist and no work

was completed, making it hard to discern any purpose for Mr. Williams's false statements other than to induce fraudulently Plaintiff into signing the factoring agreement.

Mr. Williams's subsequent conduct also evidences fraud. Mr. Williams failed to answer Plaintiff's direct inquiries regarding the status of the contract and payments, and he failed to provide payments as promised. He also urged Plaintiff not to approach HUD regarding the problem and consistently delayed providing Plaintiff with information. (ECF Nos. 1-23; 1-39). What funds were paid to Plaintiff came from Mr. Williams and Williams Global, not from HUD, as specified in the factoring agreement. (*See* ECF Nos. 1-4; 1-42). Mr. Chao's sworn affidavit attests that Mr. Williams told him in a telephone call that he intended to defraud Plaintiff. (ECF Nos. 81 ¶ 58; 83-2 ¶ 11). The HUD OIG report notes that Mr. Williams admitted to HUD employees that he intended to defraud Plaintiff. (ECF No. 83-1, at 6). Moreover, Plaintiff is entitled to an adverse inference because of Mr. Williams's invocation of the Fifth Amendment in response to questions and evidence presented against him at his deposition. (ECF No. 65-1). Taken together and viewed within the circumstances of the case, the facts in the record show that Mr. Williams intended to defraud Plaintiff.

Finally, the record shows that Plaintiff reasonably relied on Mr. Williams's misrepresentations and suffered compensable

damages.   The  initial  correspondence  between  Plaintiff  and  Mr.

Williams  shows  clearly  that  Plaintiff  entered  into  the  factoring

agreement  because  it  believed  that  ATS  contracted  to  perform

work  for  HUD.   This  reliance  was  reasonable  in  light  of  the

documents  and  representations  Mr.  Williams  sent  to  Plaintiff

purporting  to  show  the  existence  of  a  valid  contract.   It  is

also   clear   that   Plaintiff   suffered   damages   from   the

misrepresentation  because  it  was  not  repaid  the  money  owed  under

the  factoring  agreement  despite  making  a  significant  capital

outlay.   Accordingly,  Plaintiff's  motion  for  summary  judgment

will  be  granted  as  to  liability  on  Count  II  against  Mr.

Williams.

> **D.   Civil Conspiracy**

> "Under  Maryland  Law,  a  civil  conspiracy
> is  defined  as  the  'combination  of  two  or
> more   persons   by   an   agreement   or
> understanding  to  accomplish  an  unlawful  act
> or  to  use  unlawful  means  to  accomplish  an
> act  not  in  itself  illegal,  with  the  further
> requirement  that  the  act  or  the  means
> employed  must  result  in  damages  to  the
> plaintiff.'   In  addition  to  proving  an
> agreement,  'the  plaintiff  must  also  prove
> the  commission  of  an  overt  act,  in
> furtherance  of  the  agreement,  that  caused
> the  plaintiff  to  suffer  actual  injury.'"

*Marshall v. James B. Nutter & Co.*, 758  F.3d  537,  541  (4th Cir.

2014)  (quoting  *Hoffman v. Stamper*,  385  Md.  1,  24  (2005)).

Mr.  Williams  argues  that  "a  civil  conspiracy  may  not  be

entered  into  between  a  person  and  a  non-living  entity."   (ECF

No. 88, at 9).   Although Mr. Williams's argument is conclusory and misstates applicable law, he is correct that Plaintiff is not entitled to summary judgment on its civil conspiracy claim, and instead the claim should be dismissed for failure to state a claim.   Both the United States Court of Appeals for the Fourth Circuit and Maryland apply the intracorporate conspiracy doctrine, which provides that "a conspiracy between a corporation and its agent acting within the scope of his employment is a legal impossibility."   *BEP, Inc. v. Atkinson*, 174 F.Supp.2d 400, 409 (D.Md. 2001) (citing *Kairys v. Douglas Stereo, Inc.*, 83 Md.App. 667, 683 (1990) ("No conspiracy can lie between a corporation and its agent acting within the scope of his duties."), *overruled on other grounds by Montgomery Ward v. Wilson*, 339 Md. 701 (1995).   This court consistently applies the intracorporate conspiracy doctrine to conspiracy claims regarding alleged conspiracies between a corporation and its agents.   *See, e.g.*, *Bailey v. Atlantic Automotive Corp.*, 992 F.Supp.2d 560, 568 (D.Md. 2014) ("Courts have applied the intracorporate conspiracy doctrine to a variety of civil conspiracy claims, including common law and RICO conspiracy claims"); *Walters v. McMahen*, 795 F.Supp.2d 350, 358-59 (D.Md. 2011) (applying intracorporate conspiracy doctrine to bar a civil RICO conspiracy claim), *aff'd*, 684 F.3d 435 (4th Cir. 2012).

Here, Plaintiff does not allege, and the record does not show, that anyone outside of Mr. Williams, ATS, and Williams Global was part of a conspiracy to defraud Plaintiff. Plaintiff's conspiracy claim is also afflicted by issues of improper service because the original complaint did not allege civil conspiracy against ATS or Williams Global. (ECF No. 1 ¶ 89). These issues are irrelevant for the conspiracy count, however, because even if the amended complaint was served properly, it fails to state a claim. Plaintiff's original complaint alleged that Mr. Jones was involved in the conspiracy, but the amended complaint does not include, and the record does not support, such an allegation. Although Williams Global and ATS were nominally two separate companies, courts broadly construe the intracorporate conspiracy doctrine, extending it "to preclude, as a matter of law, claims of conspiracies among sister corporations wholly owned by the same parent." *Bailey*, 992 F.Supp.2d at 568 (citing *Advanced Health-Care Servs., Inc. v. Radford Cmty. Hosp.*, 910 F.2d 139, 145-47 (4th Cir. 1990)). Accordingly, Plaintiff's motion for summary judgment will be denied as to Count III, but the claim will be dismissed.

### E. Civil RICO

Plaintiff asserts a claim for racketeering pursuant to RICO's civil provision, 18 U.S.C. § 1964, which provides a cause of action to "[a]ny person injured in his business or property

by reason of a violation of [18 U.S.C. § 1962]." Plaintiff alleges that Defendants violated § 1962(c), which prohibits "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."

To establish a civil RICO violation, a plaintiff must show "(1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering." *Chambers v. King Buick GMC, LLC*, 43 F.Supp.3d 575, 588 (D.Md. 2014) (citation and internal quotation marks omitted). A plaintiff must also show "proximate cause, that is [it] was injured in [its] business or property 'by reason of' the RICO violation." *Id.* (quoting *Hemi Group, LLC v. City of New York, N.Y.*, 559 U.S. 1, 6 (2010)). The Fourth Circuit has noted that RICO "'does not cover all instances of wrongdoing. Rather, it is a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity.'" *US Airline Pilots Ass'n v. Awappa, LLC*, 615 F.3d 312, 317 (4th Cir. 2010) (quoting *Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2006)). Thus, the Fourth Circuit cautioned that district courts "ensure that RICO's extraordinary remedy does not threaten the ordinary run of commercial transactions; that treble damage suits are not brought against isolated offenders for their

harassment and settlement value; and that the multiple state and federal laws bearing on transactions . . . are not eclipsed or preempted." *Id.* (quoting *Menasco, Inc. v. Wasserman*, 886 F.2d 681, 683 (4th Cir. 1989)).

### 1.   RICO Claim Against ATS and Williams Global

The original complaint alleged a civil RICO violation against only Mr. Williams and Mr. Jones. (ECF No. 1 ¶ 95). The amended complaint removed Mr. Jones and added RICO allegations against ATS and Williams Global. (ECT No. 81 ¶¶ 95-96). As discussed above, Plaintiff did not serve ATS and Williams Global with the amended complaint as required by Fed.R.Civ.P. 5(a)(2). Accordingly, the civil RICO claim against ATS and Williams Global will be dismissed.

### 2.   RICO Claim Against Mr. Williams

To satisfy the "enterprise" element, a plaintiff "prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001). An "enterprise," as set forth in 18 U.S.C. § 1961(4), "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." Establishing "[a]n 'enterprise' requires proof of three elements: (1) an ongoing organization; (2) associates

26

functioning as a continuing unit; and (3) the enterprise is an entity 'separate and apart from the pattern of activity in which it engages.'" *Chambers*, 43 F.Supp.3d at 589 (quoting *Proctor v. Metro. Money Store Corp.*, 645 F.Supp.2d 464, 477-48 (D.Md. 2009)).

Plaintiff alleges that the enterprise is the association-in-fact of Mr. Williams, ATS, and Williams Global.  Assuming *arguendo* that Mr. Williams, ATS, and Williams Global constituted an enterprise distinct from the "persons," Plaintiff has not shown that, as a matter of law, the alleged enterprise is an entity separate and apart from the pattern of activity in which it engages.[8] *See Turner v. First Nat. Bank of Md.*, 983 F.2d 1057 (4th Cir. 1993) (unpublished table opinion) (affirming the district court's reasoning that a complaint failed to allege "an 'enterprise' separate and apart from the pattern of racketeering activity" (citing *United States v. Tillett*, 763 F.2d 628 (4th Cir. 1985))).  Courts have noted that an enterprise may be separate and apart from the pattern of activity in which it engages when the enterprise is "also engaged in legitimate . . .

---

[8]  The specific contours of what constitutes a distinct enterprise for the sake of establishing a RICO violation is murky at best, particularly in situations where the alleged enterprise consists of intertwined individual and corporate defendants.  *Compare Cedric Kushner Promotions*, 533 U.S. 158, *and Chambers*, 43 F.Supp.3d at 587-92, *with Bailey*, 992 F.Supp.2d at 581-83, *and Gondel v. PMIG 1020, LLC*, No. CCB-08-1768, 2009 WL 248681 (D.Md. Jan 22, 2009).

transactions over the same period of time for the purpose of further concealing the true intent of their enterprise." *Proctor*, 645 F.Supp.2d at 480; *see also Chambers*, 43 F.Supp.3d at 592 (accepting a plaintiff's allegations that the enterprise had "an existence separate and apart from the pattern of racketeering activity in which it was engaged" because it was also engaged in legitimate consumer business); *Tillett*, 763 at 632 (holding that the evidence showed that a narcotics trafficking enterprise existed separate and apart from the activity because it also ran a "legitimate business front for the smuggling operation").

Here, the record does not show that the enterprise existed for any purpose other than to execute the underlying fraud. *See Myland Labs., Inc. v. Akzo, N.V.*, 770 F.Supp. 1053, 1080 (D.Md. 1991) (dismissing a RICO claim because the plaintiff "alleged no ascertainable structure distinct from the pattern of racketeering acts"). For example, nothing in the record indicates that Mr. Williams, ATS, and Williams Global worked together as an enterprise to execute valid HUD contracts, perform other legitimate work, or do anything besides devise and collect on fraudulent factoring agreements. Plaintiff's brief mention, in its summary judgment motion, that RICO requires Plaintiff to prove that the enterprise is separate and apart from the pattern of racketeering activity includes no supporting

argument and points to no evidence in the record. (*See* ECF No. 83, at 20). Although it is possible that Mr. Williams, ATS, and Williams Global functioned as an enterprise apart from the fraudulent conduct, such activity is not apparent from the record. Accordingly, Plaintiff's motion for summary judgment will be denied as to Count IV.

## IV.  Conclusion

For the foregoing reasons, Plaintiff's motion for summary judgment will be granted in part and denied in part, and its motion for adverse inferences will be denied as moot. Count III will be dismissed as to all Defendants. Counts I and IV will be dismissed as to ATS and Williams Global. While Plaintiff purports to seek summary judgment in full, and it would be entitled to judgment for compensatory damages in the amount of $141,000 on Counts I and II against Mr. Williams, it has not briefed issues regarding its request for interest or consequential and punitive damages. Accordingly, summary judgment is being granted as to liability only, and a telephone conference will be scheduled with the parties to discuss unresolved issues. A separate order will follow.

/s/
_____
DEBORAH K. CHASANOW
United States District Judge
